**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ROY BINGHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 2:24-cv-0536 |
| v. | ) | Judge Nora Barry Fischer |
| | ) | |
| GIANT EAGLE, INC. | ) | ECF No. 78 |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**
**ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I.    INTRODUCTION

This is an action for failure to accommodate a disability, retaliation and disability discrimination arising from Plaintiff's relatively brief and interrupted tenure as a part-time clerk in the Prepared Foods departments of Defendant's Giant Eagle supermarkets in (a) Homestead, Pennsylvania from late 2021 to early 2022, and (b) West Mifflin, Pennsylvania between December, 2022 and January, 2023.  Presently before the Court is Defendant's Motion for Summary Judgment, seeking dismissal of Plaintiff's claims in their entirety. (Docket No. 78).  The issues having been fully briefed, the motion is ripe for determination.  For the reasons set forth below, Defendant's motion will be granted.

## II.    FACTUAL AND PROCEDURAL HISTORY

### A.  Factual History

The relevant factual history, read in the light most favorable to Plaintiff, is as follows:

Defendant is a Pennsylvania Corporation which owns and/or operates numerous supermarkets in Pennsylvania, Ohio, West Virginia, Indiana and Maryland, including stores in

Homestead and West Mifflin, Pennsylvania.  (Docket Nos. 80 at 1; 85 at 1).  Plaintiff is a Pennsylvania resident who worked at Defendant's Homestead and West Mifflin stores.  (Docket Nos. 80 at 1; 81-1 at 13; 85 at 1-2).  As a result of an automobile accident in 2003, Plaintiff suffers chronic lower back pain which necessitates chiropractic treatment, pain medication, and sometimes use of a cane or crutches.  (Docket No. 81-1 at 46-49).  Activities such as bending, lifting and prolonged standing exacerbate Plaintiff's pain, and may lead to increasingly disabling "flare-ups".  (Docket No. 81-1 at 46, 62, 200-01).

Plaintiff receives Social Security disability benefits arising from his injuries.  (Docket No. 81-1 at 28).  His pain and disability are expected to be permanent.  (Docket No. 81-1 at 42).

In 2021, Plaintiff began working at Defendant's supermarket in Homestead, Pennsylvania in the Prepared Foods department.  (Docket Nos. 80 at 3; 85 at 7).  Plaintiff's principal duties comprised serving food from heated display cases and taking payment for food, beer and wine at a cash register.  (Docket No. 81-1 at 57, 61).  Other employees did the cooking, stocking and lifting required for Defendant's operations.  (Docket No. 81-1 at 61).

Soon after Plaintiff commenced his job at the Homestead store, he was advised by his then-chiropracter, Arthur Berman, DC, that the job was exacerbating his lower back ailment.  (Docket No. 81-1 at 64).  On February 23, 2022, Dr. Berman sent a communication to Defendant's Human Relations ("HR") department indicating that due to his back injury, Plaintiff could not bend forward and down as required to serve food from the hot cases, and that he could function as a cashier only if he were provided hourly 15-minute breaks (due to restrictions on standing) and excused from stocking lower shelves (due to restrictions on bending).  (Docket No. 81-1 at 64-68, 200-01).  On the same day, the HR department informed Plaintiff that Defendant could not accommodate Plaintiff's standing and bending restrictions.  (Docket No. 81-1 at 200).  Thereafter,

Plaintiff was taken off of the work schedule, and placed on disability leave. (Docket Nos. 80 at 4; 81-1 at 69-70, 85 at 9).

On March 14, 2022, in furtherance of Plaintiff's desire to return to work, Dr. Berman provided Plaintiff with a revised list of restrictions which expressly withdrew the limitation on the duration of standing, stating that Plaintiff "can stand unlimited without need for a break." (Docket No. 81-1 at 71, 202). Plaintiff, in turn, delivered the revised list to the Homestead store manager's office. (Docket No. 81-1 at 72). Defendant did not respond to the revised list, and Plaintiff was not reinstated on the work schedule. (Docket No. 81-1 at 72, 75).

On May 13, 2022 the HR department sent Plaintiff a letter requesting that he provide confirmation of his continuing disability status, and informing him that if he did not do so by May 27, 2022, his employment status would be changed from disability leave to voluntary termination. (Docket Nos. 80 at 4; 81-1 at 73-74, 204; 85 at 12-13). Plaintiff did not respond to the HR department's letter, either by providing the requested confirmation or by calling the telephone number provided therein for any questions. (Docket Nos. 80 at 5; 81-1 at 73-74; 85 at 13).

In November, 2022, Plaintiff, having observed while shopping that the Prepared Foods department at Defendant's West Mifflin supermarket appeared understaffed, inquired of the department's then-Manager Brad Fragello about coming to work there. (Docket Nos. 80 at 5; 81-1 at 76; 85 at 14). Plaintiff informed Fragello of his back injuries, but not of any particular work restrictions. (Docket No. 81-1 at 79-81). Fragello recognized the Plaintiff "couldn't do much" due to his injuries, but nevertheless hired him to perform substantially the same duties Plaintiff had done at the Homestead store. (Docket Nos. 81-1 at 77; 86-1 at 12). Plaintiff commenced working at the West Mifflin store on or about December 3, 2022. (Docket Nos. 80 at 5; 85 at 15). Fragello saw that Plaintiff sometimes walked with a cane; however, on some unspecified date

between December 3 and December 27, 2022, Fragello sent Plaintiff home during a workshift, stating that Plaintiff was not permitted to use a cane or crutches at work. (Docket Nos. 81-1 at 123; 86-1 at 12).[1]

On or about December 27, 2022, Jarrod Johnson was transferred into the West Mifflin store with the intention that he would replace Fragello as Prepared Foods Manager after a transition period of a week or two (during which the two managers would work together, affording Johnson an opportunity to learn from his predecessor about operations and personnel in that store). (Docket Nos. 80 at ; 81-3 at 31; 85 at 16-17). For reasons unrelated to Plaintiff or to the issues in this action, Fragello's employment was abruptly terminated that same day, so that the two managers worked together for only about four hours. (Docket No. 81-3 at 30). During that time, Fragello informed Johnson that Plaintiff was the department's "closer", generally working to the end of the day's last shift. (Docket No. 81-3 at 35-36). Fragello did not inform Johnson that Plaintiff had any injuries, disabilities or job restrictions. (Docket No. 81-3 at 38).

Plaintiff first worked under Johnson's supervision on December 27, 2022, at which time Plaintiff and Johnson exchanged accounts of their respective automobile accidents and resulting injuries, but Plaintiff did not inform Johnson of any job restrictions.[2] (Docket No. 81-1 at 35, 80-81). On January 12, 2023, Johnson directed that Plaintiff should work on the Prepared Foods department's cooking operation that day, rather than at the cashier station. (Docket Nos. 80 at 8; 81-1 at 38; 85 at 13). Johnson conveyed this direction to Chris Velez, the Assistant Front End Manager, who in turn relayed it to Plaintiff. (Docket No. 81-1 at 38). Plaintiff responded that he

---

[1] Fragello testified that Plaintiff's use of a cane was not a problem when Plaintiff was working at the Prepared Foods front counter cashier station. (Docket No. 86-1 at 12). The version of facts set forth in the text of this section reflects a reading of the proffered evidence, and a resolution of conflicts or credibility issues, in the light most favorable to Plaintiff for purposes of Defendant's pending motion. *See* Section III, *infra*.

[2] Johnson has testified to an account of the parties' interactions at odds with Plaintiff's account. *Cf.* n.1, *supra*.

was not a cook; that he didn't know how to cook; and that he could not do the cooking job due to his disability.  (Docket No. 81-1 at 38-39).  Plaintiff asked to be transferred instead to a general cashier position (not in prepared foods), but all such positions at the store had been filled.  (Docket Nos. 81-1 at 39, 94; 81-3 at 55-57, 71).  When Plaintiff continued to maintain that he could not cook due to lack of training and disability, Johnson fired him.  (Docket No. 81-1 at 39).  Because Plaintiff was within a ninety-day probationary period for his employment at the West Mifflin store, Defendant did not follow the multi-step disciplinary process that would otherwise be applicable, and Plaintiff's termination was effective immediately.  (Docket Nos. 80 at 9; 85 at 26).

**B.  Procedural History**

Plaintiff filed a Charge against Defendant with the Equal Employment Opportunity Commission on or about June 27, 2023, and received a Notice of Right to Sue related to the Charge dated January 10, 2024.  (Docket Nos. 80 at 9; 85 at 27).  On April 9, 2024, Plaintiff timely brought the present action against Defendant, asserting claims under the Americans with Disabilities Act ("ADA") and the Pennsylvania Human Relations Act ("PHRA") for failure to accommodate his disability, and retaliatory and discriminatory discharge. (Docket No. 1).[3]  Following discovery, Defendant's Motion for Summary Judgment, Brief in Support and Concise Statement of Material Facts with Appendix were filed on August 4, 2024.  (Docket Nos. 78-81).  Plaintiff's Brief in Opposition, Concise Statement of Material Facts and Appendix were filed on September 17, 2024.

---

[3] "[T]he same legal standard that applies to the ADA applies equally to disability discrimination claims under the PHRA."  *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 499 n.3 (3d Cir. 2010), citing *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir.1996).  As the Court of Appeals explained in *Kelly*, "Pennsylvania courts . . . generally interpret the PHRA in accord with its federal counterparts.  Moreover, the PHRA definition of 'handicap or disability' is substantially similar to the definition of 'disability' under the ADA.  Consequently, the district court properly treated Kelly's PHRA claims as coextensive with his ADA . . . claims".  *Kelly*, 94 F.3d at 105 (citations omitted).  *See also, e.g.*, *Harper v. Odle Mgmt. Co., LLC*, 2021 WL 732718, at *8 n.2 (W.D. Pa. Feb. 25, 2021) ("Because the provisions of PHRA and ADA are parallel in all relevant respects, the same analysis applies to disability claims under both statutes."); *Morgan v. Allison Crane & Rigging LLC*, 114 F.4th 214, 220 n.21 (3d Cir. 2024) ("Absent an act of the Pennsylvania legislature or guidance from Pennsylvania courts . . . , federal courts should continue to interpret the PHRA in harmony with the ADA.").

(Docket Nos. 84-87).  All further responsive briefing has now been completed and the motion is ripe for disposition.  (Docket Nos. 90-92).

## III.    APPLICABLE LEGAL STANDARD

Summary judgment is appropriate if, drawing all inferences in favor of the nonmoving party,[4] the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a) & (c)(1)(A).  Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact; that is, the movant must show that the evidence of record is insufficient to carry the non-movant's burden of proof.  *Id*.  Once that burden has been met, the nonmoving party must set forth "specific facts showing that there is a *genuine issue for trial*" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law.  *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (quoting FED.R.CIV.P. 56(e)) (emphasis added by *Matsushita* Court).

An issue is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty-Lobby, Inc*., 477 U.S. 242, 248 (1986).  In *Anderson*, the United States Supreme Court noted the following:

---

[4] *See e.g.*, *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007) (noting that the court interprets the facts in the light most favorable to the non-moving party and draws all reasonable inferences in its favor).

> [A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. . . . [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Id*. at 249-50 (internal citations omitted). *See also McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005).[5]

## IV.    RELEVANT STATUTORY PROVISIONS

The Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101, *et seq.* (the "ADA"), provides in relevant part:

> No covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . discharge of employees, . . . and other terms, conditions, and privileges of employment.
>
> . . . .    [T]he term "discriminate against a qualified individual on the basis of disability" includes . . . . not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity . . . .
>
> . . . . .
>
> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

42 U.S.C. §§ 12112(a), 12112(b)(A)(5), 12203(a). *See also* 29 C.F.R. §§ 1630.4(a), 1630.9(a), 1630.12(a).

---

[5] In summary, the inquiry under a Rule 56 motion is whether the evidence of record (a) presents a genuine dispute over material facts so as to require submission of the matter to a jury for resolution or (b) is so one-sided that the movant must prevail as a matter of law. It is on this standard that the Court has reviewed the pending motion.

## V.    DISCUSSION

### A.  Failure to Accommodate

To prevail on a failure to accommodate claim, a plaintiff must prove: (1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for [such] disability; (3) the employer did not make a good-faith effort to help the employee seek such accommodations or assistance; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith.

*Harper*, 2021 WL 732718 at *15, citing *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 157 (3d

Cir. 2017), and *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 319-20 (3d Cir. 1999).

Defendant argues that "Bingham's failure to accommodate claim fails because he did not

request an accommodation." (Docket No. 79 at 9). This Court agrees. The notice required to

trigger an employer's obligation to make reasonable accommodations for disability must ordinarily

convey knowledge of both the employee's disability-related work limitations and his desire for

accommodations to help overcome those limitations. As to the former requirement, a leading case

from the Court of Appeals for the Fifth Circuit has explained:

For purposes of proving ADA discrimination, it is important to distinguish between an employer's knowledge of an employee's disability versus an employer's knowledge of any limitations experienced by the employee as a result of that disability. This distinction is important because the ADA requires employers to reasonably accommodate limitations, not disabilities. . . . . [T]he ADA does not require an employer to assume that an employee with a disability suffers from a limitation. In fact, better public policy dictates the opposite presumption: that disabled employees are not limited in their abilities to adequately perform their jobs. . . . . Accordingly, it is incumbent upon the ADA plaintiff to assert not only a disability, but also any limitation resulting therefrom.

*Taylor v. Principal Financial Group, Inc.*, 93 F.3d 155, 163-64 (5th Cir. 1996).[6]

---

[6] The Fifth Circuit's *Taylor* opinion was cited with approval by the Third Circuit in *Conneen*, 334 F.3d at 332 n.14, and in *Taylor*, 184 F.3d at 312, 313.

As to the second requirement, an employee "must make clear that the employee wants assistance for his or her disability. In other words, the employer must know of both the disability and the employee's desire for accommodations for that disability." *Taylor*, 184 F.3d at 313. *See also Conneen*, 334 F.3d at 332 ("[E]ither by direct communication or other appropriate means, the employee 'must make clear that [he/she] wants assistance for his or her disability.'") (quoting *Jones v. United Parcel Serv.*, 214 F.3d 402, 408 (3d Cir. 2000)); 29 C.F.R. Part 1630 App. § 1630.9 ("In general, . . . it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed."). *Cf. Bair v. Citizens Bank of Pennsylvania*, No. 4:13-CV-2866, 2015 WL 13738832, at *9 (M.D. Pa. Sept. 21, 2015), *report and recommendation adopted*, 2015 WL 6701340 (M.D. Pa. Nov. 2, 2015) ("A statement by an employee that she is disabled or has been diagnosed with a disease or disorder, without more, is insufficient to constitute a request for accommodation.").

In the present case, while Plaintiff was working at the Homestead store, he informed Defendant of his disability-related restrictions, and requested corresponding accommodations, through Dr. Berman's February 23, 2022 letter. *Cf. Taylor*, 184 F.3d at 313 (recognizing that under EEOC guidelines, a "health professional, or other representative may request a reasonable accommodation on behalf of an individual with a disability"). However, Defendant promptly and explicitly denied Plaintiff's requested accommodations.[7] On March 14, 2022, having reviewed Plaintiff's limitations "as it pertains to work", Dr. Berman changed his assessment to indicate that

---

[7] Any claim for failure to accommodate predicated on Defendant's February 23, 2022 denial of Plaintiff's requested accommodations at the Homewood store (or on Defendant's May 27, 2022 termination of Plaintiff's disability leave) is time-barred. *See* 42 U.S.C. § 200e-5(e)(1) (requiring filing of a charge with the EEOC or PHRA "within three hundred days after the alleged unlawful employment practice occurred"); 42 U.S.C. § 12117(a) (providing that the "procedures set forth in section[] . . . 2000e-5 . . . of this title shall [apply] . . . to any person alleging discrimination on the basis of disability in . . . employment"). *Cf. Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002) ("A discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.' A party, therefore, must file a charge within . . . 300 days of the date of the act or lose the ability to recover for it.").

> [Plaintiff] can stand unlimited without a need for a break.  His only limitation is bending forward and reaching while in a standing position to get things below his waist.  He should be able to perform any other job without limitations.

(Docket No. 81-1 at 202).[8]

When Plaintiff started a new job at Defendant's West Mifflin store, he informed his new managers of his injuries and disability, but he did not inform them of any resulting functional limitations or restrictions, and did not formally request any accommodations.  Plaintiff testified at deposition with respect to disclosure of his disability-related limitations, as follows:

> Q        . . . [W]hen you started at [the West Mifflin store] . . . you said you told [Fragello] you had a disability, but did you tell him that there were any specific limitations you had on your ability to perform your work?
>
> A        They didn't ask me that question.
>
> . . . .
>
> Q        Did you tell . . . Fragello . . . that you were subject to any of [the] restrictions [mentioned in Dr. Berman's email]?
>
> A        No.  I told [him] I had a disability. . . . I told him, but nobody asked me – well, if I told him I have lower back injury, . . . nobody asked me, . . . what is this limitation, nothing like that.  Nobody never asked me.  . . . .
>
> Q        Did you ever tell . . . Fragello or . . . Johnson that you had a limitation as far as how often you could stand?
>
> . . . . .
>
> A        I didn't go into detail.  I just told them I have a disability.
>
> Q        . . . . . [D]oes that mean you didn't mention any specific limitations about how often you could . . . stand?
>
> A        . . . . . [N]o, I don't just tell them unless they ask me.  But I told them I'm disabled, I got a disability.

---

[8] As indicated in Section II, *supra*, Plaintiff made no request to return from leave to an available position at that time, subsequently failed to respond to Defendant's May 2022 request that he confirm/update his continuing medical status, and was therefore then removed from disability leave as a voluntary termination.

(Docket No. 81-1 at 79-81).[9]  Plaintiff explained his failure to inform Defendant of his disability-related work limitations by observing that "[a]s far as my knowledge, if anybody got a disability and they're disabled, they have a limit somewhere."  (Docket No. 81-1 at 79).  The salient consideration is, however, whether an individual employee's disability limits (and therefore requires reasonable accommodation to) an aspect of his employment, *i.e.*, his performance of his work.  And the ADA does not impose a duty upon employers to divine where a limitation may fall, without guidance from the affected employee.  *See Conneen*, 334 F.3d at 331 ("neither the law nor common sense can demand clairvoyance of an employer"); *id.* at 333 (employer "cannot be held liable for failing to read [employee's] tea leaves").

In his brief, Plaintiff contends that Defendant "had longstanding knowledge of Mr. Bingham's . . . functional limitations" because Dr. Berman "submitted documentation . . . specifying restrictions: standing no more than 45 minutes per hour, no bending below the waist, no lifting above 30 pounds, need for regular breaks, and suitability only for cashier work", and then "clarified [that Plaintiff] should not bend or perform physical labor."  (Docket No. 84 at 1-2).[10]  However, Dr. Berman's March 14, 2022 letter did not merely "clarify" Plaintiff's bending and lifting restriction; rather, it explicitly withdrew all of the other restrictions mentioned in his February 23, 2022 letter.  Defendant was entitled to rely upon this assessment.[11]  *Cf. Conneen*, 334

---

[9] Although Plaintiff's managers did not ask him about work restrictions attributable to his disability, Defendant's HR department did, in its May 13, 2022 letter, ask for an update on his limitations in order to re-certify his disability leave – to no response.  (Docket Nos. 80 at 4-5; 81-1 at 73-74, 204).

[10] Plaintiff adds that "[a]t all times, Mr. Bingham was subject to SSA restrictions limiting him to 20 hours per week." (Docket No. 84 at 2).  However, as Plaintiff concedes elsewhere, this was not a "functional" limitation, but a financial one.  *See* Plaintiff's Statement of Additional Facts ¶ 14 ("[Plaintiff] is subject to SSA restrictions that limit his work hours (no more than 20 hours per week) to avoid disqualification for ongoing disability benefits.") (Docket No. 85 at 30); Plaintiff's Answer to Defendant's Interrogatory No. 6 (Docket No. 81-1 at 179-80).

[11] Plaintiff indicated in his Answers to Interrogatories that "Dr. Berman has comprehensive knowledge of all the Plaintiff's back injuries and treatments during the Plaintiff's employment with the Defendant."  (Docket No. 81-1 at 174).

F.3d at 333 (employee "had an obligation to truthfully communicate any need for an accommodation, or to have her doctor do so on her behalf").  Plaintiff, through Dr. Berman, told Defendant that he was no longer limited in his ability to stand, and in most other respects, and Defendant "is not to be faulted for taking [him] at [his] word".  *Conneen*, 334 F.3d at 332.

As for Plaintiff requesting accommodations while at the West Mifflin store, Plaintiff has not pointed to any evidence that he made such a request (and this Court's reasonably thorough review of the record reveals no such evidence).  *Cf.* Docket No. 81-1 at 61-62 ("I didn't think I needed to ask for accommodation if I told them I have a disability, I'm on Social Security Disability.").  In his brief, Plaintiff contends that he was not required to ask for an accommodation under the circumstances of this case because he was "hired with an accommodation", making such a request superfluous.  In particular, Plaintiff asserts that Fragello "testified unequivocally that [Plaintiff] was hired 'with an accommodation,' limited to cashier, counter, and light-duty tasks, and not required to cook, stock, or perform heavy lifting" and "was also permitted to use a cane and a stool at the register".  (Docket No. 84 at 2) (citing Fragello Depo., Docket No. 86-1 at 12, 15).  *See also* Docket No. 84 at 9 ("Those accommodations — cashier/front counter duties only, use of a cane and stool, exemption from cooking and stocking — were approved by both . . . Fragello and . . . Hemminger".) (citing same).[12]

However, each component of Plaintiff's claimed accommodations, other than an exemption from heavy lifting and perhaps use of a cane, is unsupported by the evidence adduced

---

[12] Plaintiff also cites testimony of Defendant's corporate representative, Jennifer Thompson, in support of his contention that he was hired with accommodations.  However, the cited testimony consists solely of Plaintiff's counsel directing the witness's attention to a passage from the already-cited portion of Fragello's deposition, and the witness acknowledging that she could see it.  (Docket No. 86-4 at 15-16).  Such "evidence" is not even a make-weight, as it adds nothing to the Court's inquiry.

therefor.  To begin, the only portion of Fragello's cited testimony that may reasonably be read as referring to any particular accommodation is as follows:

> Q.    When you talked to [Plaintiff], did you talk about surgery?
>
> A.    He just said he really couldn't do much, so we kind of just put him on the front counter. You know, didn't have him trying to lift cases of chicken or anything like that. I believe he walked with a cane.

(Docket No. 86-1 at 12).  Construing this testimony and permissible inferences in the light most favorable to Plaintiff, it is reasonable to infer that Fragello informally (*i.e.*, "kind of just") accommodated Plaintiff's post-surgical inability to "do much" by assigning him to the front counter, not asking him to lift heavy weights, and permitting him to use a cane as needed.[13]  Yet even as to that *ad hoc* accommodation, there is nothing in Fragello's testimony to support Plaintiff's conclusion that his assignment to the front counter was exclusive of other assignments that did not require heavy lifting or preclude occasional use of a cane.  Accordingly, the Court finds that Plaintiff's assertion that he was hired subject to an accommodation of "cashier/front counter duties only" is unsupported by the record.

The remaining purported accommodations – "use of a . . . stool, [and] exemption from cooking and stocking" – are wholly unsupported by Fragello's cited testimony.  As for the stool, Fragello testified that "there was always a stool there" by the cashier station, and that he "didn't have a problem" with Plaintiff using the stool "as long as the customers were . . . taken care of".

---

[13] The conclusion that Plaintiff's work assignment was intended to accommodate his disability is supported by the word "so" in the quoted language (indicating a causal link between Plaintiff's disability and his work assignment), as well as by Fragello's explicit acknowledgement that he "understood . . . that [he was] accommodating [Plaintiff] because he had a disability". (Docket No. 86-1 at 15).  The conclusion that the accommodation included an exemption from lifting heavy weights is also straightforward, following directly from the same linking language ("he really couldn't do much, so we . . . didn't have him trying to lift cases of chicken").  And although on its face Fragello's observation that Plaintiff walked with a cane is not linked to any assignment or forbearance on Defendant's part, his immediately following testimony to the effect that Plaintiff's use of a cane "wasn't a problem . . . because he was just right up front" (Docket No. 86-1 at 12) supports an inference that enabling Plaintiff to use his cane may have been a consideration, along with avoiding heavy lifting, in assigning him to the front counter.  *But cf.* Docket No. 81-1 at 123 (testifying that Fragello told Plaintiff that he couldn't have a cane or crutches at work).

(Docket No. 86-1 at 15).  This testimony in no way supports Plaintiff's contention that he was permitted to use a stool as an accommodation.  As for cooking and stocking, Fragello testified:

> Q.    Nobody had a problem with [Plaintiff] working there with his limitations and disability? Not when you ---?
>
> A.    Not while I was there, no.
>
> . . . . .
>
> Q.    Nobody ever said, you know, we need [Plaintiff] to cook and, you know, bend and lift and do every other job on the hot food side?
>
> . . . . .
>
> [A.]    Not while I was there.

(Docket No. 86-1 at 14-15).  Clearly, the mere fact that nobody needed Plaintiff to cook, or stock,[14] or do any other particular job is not evidence that he was exempted from those tasks as an accommodation.  The Court therefore finds that Plaintiff's assertions that his accommodation included permission to use a stool or exemption from cooking or stocking are also unsupported by the record.[15]

In sum, as to the state of the record as to accommodation, Plaintiff has proffered evidence that would enable a reasonable factfinder to conclude that he was hired with the accommodations that he would be permitted to use a cane and exempted from heavy lifting, corresponding to functional limitations known to Fragello with respect to walking and lifting.  In addition, the

---

[14] The Court presumes that the reference to "bend and lift" in the question asked of Fragello encompasses stocking; otherwise nohting in the cited testimony is in any way relevant to a putative exemption from stocking.  This presumption finds some support in the Dr. Berman's February 23, 2022 letter, which sought to limit Plaintiff's stocking of shelves to those "above his waist", because "bending lower will cause severe pain.  (Docket No. 81-1 at 203).  The Court notes that "bending forward and reaching while in a standing position to get things below his waist" is the sole limitation carried over by Dr. Berman in his March 14, 2022 letter.  (Docket No. 81-1 at 202).

[15] There is also nothing in the cited testimony – or elsewhere, so far as the Court is aware – to support Plaintiff's assertion that his claimed accommodations were approved by Hemminger.  The only portion of the cited testimony that in any way bears upon the point is Fragello's affirmative response to a question as to whether his managers knew that he hired Plaintiff "with an accommodation".  (Docket No. 86-1 at 15).  That testimony is plainly insufficient to establish that Hemminger knew or approved of any of the purported accommodations claimed by Plaintiff, or indeed of any specific accommodations whatsoever.

evidence would support a finding that Plaintiff also had a functional limitation with respect to bending and lifting, as described in Dr. Berman's March 14, 2022 letter; and that Defendant's HR department knew of this limitation – although there is no evidence that Plaintiff needed or received any corresponding accommodation. On the other hand, Plaintiff has failed to proffer meaningful evidentiary support for his contentions that his accommodations included assignment only to the front counter cashier station, or use of a stool, or exemption from cooking or stocking. Plaintiff has also failed to proffer evidence which would enable a factfinder to conclude that as a result of his disability he is limited in the duration for which he can stand (which could affect his need for a stool, or his ability to cook for prolonged periods).

Having made the foregoing assessment of the evidence, the Court may now address Plaintiff's contention that because he was hired with accommodations, he was excused from the usual duty of an employee to initiate the process by asking for accommodations. The Court agrees with Plaintiff to the following extent: if an employer were to withdraw accommodations previously granted to an employee – such as, in this case, by Defendant forbidding Plaintiff to use a cane, or requiring him to lift cases of chickens – the employer would then have an obligation to engage in a dialog with the employee about how he might otherwise be enabled to perform the essential requisites of his job in the face of his known functional limitations, even if the employee neglected to ask for a replacement accommodation. This is so because withdrawal of existing accommodations without abatement of the disability-related limitations to which they were addressed would constitute "circumstances . . . sufficient to cause a reasonable employer to make appropriate inquiries about the possible need for an accommodation." *Conneen*, 334 F.3d at 332. On the other hand, where an employee requires different or additional accommodations to those already provided, the employee retains the obligation to initiate the accommodations process by

informing the employer of his or her need for such additional or different accommodations, and of the functional limitation(s) to which the requested accommodations would be addressed.[16]

Plaintiff contends, in effect, that this case involves Defendant's withdrawal of established accommodations, rather than failure to provide new or different accommodations. Specifically, Plaintiff asserts that on January 12, 2023 (the day Plaintiff was terminated), Johnson demanded that Plaintiff "perform physically demanding cook duties" that were "inconsistent with his accommodations" and that "he could not perform because of his disability." (Docket No. 84 at 3, 10). Once again, however, Plaintiff's version of the facts is unsupported by the evidentiary record. Plaintiff points to no evidence specifying the "cook duties" he was asked to perform, or establishing the "physically demanding" nature of such duties.[17] Nor does he offer evidence of his physical inability to perform any such duties. Moreover, the record does not support Plaintiff's assertion that the "cook duties" were inconsistent with his accommodations. This Court has already found Plaintiff's claim that he was exempted from cooking as an accommodation to be unsupported by the evidence; and Plaintiff proffers no evidence that the cooking duties which he was asked to perform necessarily required heavy lifting[18] or precluded use of a cane[19] – which are the only accommodations the Court has found to be supported by the record.

---

[16] Moreover, if the nature or extent of the asserted limitation is not apparent, the employee may also be required to provide a physician's opinion or other confirmation thereof. *See* 29 C.F.R. Part 1630 App. § 1630.9 ("When the need for an accommodation is not obvious, an employer, before providing a reasonable accommodation, may require that the individual with a disability provide documentation of the need for accommodation.").

[17] In his deposition, Plaintiff testified only that the cooking job involved "prepar[ing] everything that they serve through the hot box." (Docket No. 81-1 at 85). Plaintiff conceded that he lacked information about the cooking job: "half [of the food] I don't even know nothing about because I never even heard of it." (*Id.*).

[18] Plaintiff's only testimony about lifting required by the cooking assignment concerned picking up chickens (not cases of chicken), which he used to do to help "the young lady there that used to cook", who had injured rotator cuffs. (Docket No. 81-1 at 85). This testimony clearly does not indicate that the required lifting was beyond Plaintiff's physical abilities (or his accommodated lifting limitation).

[19] Even if the cooking assignment were shown to preclude use of a cane, that would not render the assignment on January 12, 2023 inconsistent with Plaintiff's accommodations, because there is no evidence that Plaintiff was using a cane on that day.

The only aspect of the cooking assignment identified by Plaintiff as implicating a disability-related limitation was the need to stand for prolonged periods. According to Plaintiff, [t]o prepare all of the food . . . . . you'd stand up and doing all that . . . . . I couldn't . . . stand there all day long cooking food all day standing there." (Docket No. 81-1 at 85-86). When Plaintiff was asked whether there was "anything about the cooking that [he was] unable to do", other than "the fact that [he] had to stand," he replied that "[i]t was standing and I didn't know how to cook the food." (Docket No. 81-1 at 86). But as discussed above, Plaintiff did not inform his managers of any restriction on standing, and the most recent communication from his doctor indicated that he could "stand unlimited without a need for a break". If Plaintiff believed that his physical condition had worsened, so that he was limited in his ability to stand, it was incumbent on him to inform Defendant of his limitation and to request an accommodation for it.

Finally, Plaintiff appears to contend that his request for transfer to a Front End cashier position, upon his refusal to perform the cooking assignment and just before his termination, constituted a request for a disability accommodation. *See* Docket No. 81-1 at 4, 15 ("Immediately before his termination, [Plaintiff] had requested to be transferred to a cashier role, consistent with his restrictions."). Plaintiff's testimony on the transfer request is as follows:

> I just said to [Johnson] . . . , how am I going to be a cook when I never went to school for a cook and I got an injury?  . . . . . I said, I'm not a cook, and I can't do it because I'm injured anyway.
>
> I said, . . . just give me a transfer to be a cashier out of the department then. I can't do what you're trying to force me to do because I have a disability.

(Docket No. 81-1 at 38-39). *See also* Docket No. 81-1 at 94 ("I told him I didn't know how to cook. And I told him I couldn't be no cook, and transfer me to another department to a cashier."). Nothing in Plaintiff's testimony links his transfer request to any particular functional limitation due to his disability. No evidence contradicts Johnson's testimony as to his own understanding of

the purpose of the transfer request: "I just thought that [Plaintiff] didn't want to be in prep foods anymore. He never said it was because of a medical issue or a medical concern." (Docket No. 81-3 at 55-56).[20] *Cf. Wilkinson v. Marvin E. Klinger, Inc.*, No. 4:15-cv-01916 (M.D. Pa. Dec. 5, 2017) ("although a request for transfer to a vacant position can constitute a request for a reasonable accommodation, plaintiff's claim nevertheless failed as a matter of law because said request for transfer did not relate to her . . . disability, but rather was caused by a desire to change supervisors") (citing *McLean v. Abington Memorial Hosp.*, No. 15-CV-671, 2015 WL 5439061, at *8 (E.D. Pa. Sept. 15, 2015).

Accordingly, the Court finds that Plaintiff has not proffered evidence that would enable a reasonable factfinder to conclude that Plaintiff made an effective request for ADA accommodation during his tenure at the West Mifflin store.

Finally, even if Plaintiff's last-minute transfer request could be understood as a request for accommodation of a disability-related limitation on standing, that would not suffice to require Defendant to engage in an interactive accommodations process in the circumstances of this case, because Plaintiff cannot show that such a limitation "could have been reasonably accommodated".[21] *See Echevarria v. AstraZeneca, LP*, 133 F. Supp. 3d 372 (D. P.R. 2015) ("[R]equests for accommodation that could not result in a reasonable accommodation do not trigger processes not likely to produce them.") (quoting, *inter alia*, *Richardson v. Friendly Ice*

---

[20] The Court notes that Plaintiff had shown a longstanding preference for a cashier position, irrespective of his disability limitations. *See* Docket No. 81-1 at 202 (statement in Dr. Berman's February 23, 2022 letter that Plaintiff "wishes to try being a cashier, which would probably be ok if he has a 10-15 minute break every hour"). *See also and compare* Docket No. 81-1 at 87 ("I know how to work a cash register. I've been working a cash register since I've been, like, ten years old. . . . . I know how to wait on customers."), *with id.* at 85-86 ("I didn't know how to cook all that stuff they were trying to get me to cook. . . . . I didn't know how to cook the food.").

[21] While the Court's discussion heretofore concerns the second element of a claim for failure to accommodate (employee requested accommodation), this paragraph and the one that immediately follows it concern the fourth element (disability could have been reasonably accommodated). *See, e.g., Harper, supra*.

*Cream Corp.*, 594 F.3d 69, 82 (1st Cir. 2010)).[22]  Here, undisputed evidence of record indicates that further discussion of Plaintiff's request for transfer to a Front End cashier position as a means of accommodating a limitation on standing would have been futile, for three reasons.  First, no such position was available.  Johnson testified without contradiction that when he talked to Plaintiff about the possibility of a "transfer to the front of the grocery store . . . to be a cashier", the Front End department was "already in the process of hiring other people"; and that by the time Plaintiff requested transfer on January 12, 2023 Johnson's attempts to secure a transfer for Plaintiff had been "exhausted", as "those positions were filled and there was nothing else I could do for him."  (Docket No. 81-3 at 55, 57, 71).  *Cf.* 42 U.S.C. § 12111(9) ("The term 'reasonable accommodation' may include . . . (B) . . . reassignment to a *vacant* position".) (emphasis added).

Second, even if a Front End cashier position were available, a transfer would not have alleviated any difficulties Plaintiff anticipated from prolonged standing.  As Johnson further testified without contradiction, "[b]eing a cashier, . . . you're standing up for eight hours.  . . . . There was no chair."  (Docket No. 81-3 at 46).  Third, Defendant's HR department had already expressly foreclosed any possibility of modifying the cashier position to allow for the hourly breaks that Dr. Berman had previously said would be necessary to enable Plaintiff to work as a cashier.

For all of the foregoing reasons, the Court finds that there is no genuine issue of material fact as to Plaintiff's claim for failure to accommodate, and that Defendant is entitled to judgment thereon as a matter of law.

---

[22] In *Richardson*, the Court of Appeals for the First Circuit opined that "[a]n interactive process claim cannot succeed unless the interaction could have led to the discovery of a reasonable accommodation that would have enabled the plaintiff to perform the essential functions of her position."  *Richardson*, 594 F.3d at 82.

## B.  Retaliation

> To establish a prima facie case of retaliation under the ADA, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action.

*Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997).  Defendant contends that Plaintiff cannot satisfy either the first or third of these elements.

Protected activity under the ADA includes "oppos[ing] any act or practice made unlawful" by the Act.  42 U.S.C. § 12203(a).[23]  In addition, as Defendant acknowledges, requesting an accommodation is also a protected activity.  (Docket No. 79 at 13) (citing *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 191 (3d Cir. 2003)).[24]

Plaintiff argues in his brief that

> [Plaintiff] engaged in protected activity when he told . . . Johnson that he was unable to perform cook duties because of his disability and existing accommodations, and when he requested to be transferred to the cashier position consistent with those restrictions.  [Plaintiff's] statement that he was "not a cook" and could not do what . . . Johnson was demanding "because I have a disability" was a clear assertion of ADA rights and notice of his existing accommodation.

(Docket No. 84 at 16).  *See also* Docket No. 84 at 3 (asserting that Plaintiff's refusal to "perform physically demanding cook duties inconsistent with his accommodations", citing his disability, was "a protected assertion of ADA rights").

---

[23] Section 12203 also protects participation in proceedings under the ADA.  42 U.S.C. § 12203(a).  Here, it is undisputed that Plaintiff did not initiate or otherwise participate in any proceeding under the ADA prior to his termination.

[24] The Court assumes that an employee's invocation of an existing accommodation would also be a protected activity under the ADA, because it tends to stand in opposition to an employer's possible unreasonable restriction or withdrawal of the accommodation, which might be unlawful under the Act.

As discussed in detail in Section V(A) of this opinion, the essential predicates of Plaintiff's argument are unsupported by the evidence. In particular, the record does not support Plaintiff's assertion that he had an existing accommodation that exempted him from cooking. Nor is there evidence that Plaintiff was claiming to have such an existing accommodation.[25] The record also does not support Plaintiff's assertion that his request for transfer to a cashier position was "consistent with" any applicable restrictions, or his implicit assertion that his request sought accommodation with respect to any disability-related restrictions.[26] Accordingly, the Court finds that Plaintiff has not proffered evidence to show that he engaged in the ADA-protected activities of invoking a purported existing accommodation or requesting a new or different accommodation.

What remains is Plaintiff's generalized invocation of his disability as an additional reason that he could not be a cook. *See, e.g.*, Docket No. 81-1 at 39 ("I said, I'm not a cook, and I can't do it because I'm injured anyway."). However, an employee's mere mention of his disability, with no specification of functional limitations and no request for accommodation with respect to such limitations, does not constitute protected activity under the ADA: it serves neither to initiate or participate in any proceeding, nor to oppose any potential unlawful practice. *See* 42 U.S.C. § 12203(a).

For the foregoing reasons, Plaintiff cannot satisfy the first element of his retaliation claim (protected activity). It is therefore unnecessary for the Court to address whether he is also unable to satisfy the third element (causal connection to his termination). The Court finds that there is no

---

[25] In context, Plaintiff's statement that he was "not a cook" was clearly not "notice of his [claimed] existing accommodation". Rather, Plaintiff was making the point that just as his manager – Plaintiff appeared uncertain as to whether he was addressing Johnson, or Velez, or both – could not rebuild a diesel engine because he "never went to school for it", and was "not a mechanic", so also Plaintiff could not be a cook because he "never went to school for a cook", and was "not a cook". (Docket No. 81-1 at 38-39). Neither here nor anywhere else in his testimony does Plaintiff assert that he had an existing accommodation that exempted him from cooking.

[26] The Court finds Plaintiff's reference to "those restrictions" essentially meaningless, as the quoted passage does not identify any restrictions to which the adjective "those" could apply.

21

genuine issue of material fact as to Plaintiff's claim for retaliation, and that Defendant is entitled to judgment thereon as a matter of law.

### C. Disability Discrimination

[I]n order for a plaintiff to establish a prima facie case of discrimination under the ADA, the plaintiff must show: "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination."

*Taylor*, 184 F.3d at 306, quoting *Gaul v. Lucent Technologies*, 134 F.3d 576, 580 (3d Cir. 1998).

*See also, e.g.*, *Morgan*, 114 F.4th at 220-21.  As to the first element, the record is replete with evidence that Plaintiff suffers chronic lower back pain, which – at least during "flare-ups" – substantially limits the activities of walking, standing, bending and lifting.  Defendant effectively concedes that Plaintiff is disabled, by offering no argument to the contrary.  (Docket No. 79 at 21).

As to the second element, Defendant argues that Plaintiff "demonstrated that he could not carry out his essential duties" when he (i) "left chickens in the hot case overnight", (ii) "became verbally abusive to his leader", and (iii) "refused to perform any cooking in response to a directive to do so".  (Docket No. 79 at 21).  However: (i) Defendant's failure to fire Plaintiff for leaving chickens in the hot case shows that Defendant did not consider that incident standing alone to be disqualifying;[27] (ii) although Johnson testified that Plaintiff "became verbally abusive" when he was asked to cook (Docket No. 81-3 at 43), he did not specify the nature or content of the purported

---

[27] The Court appreciates Defendant's position that leaving chickens in the case overnight creates a food safety issue.  *See, e.g.*, Docket No. 86-7 at 32 (Hemminger testimony that "if somebody would buy them in the morning, it would be a food safety violation").  Plaintiff's testimony that he considered Defendant's writing him up for the incident to be "petty" because he and his coworkers would regularly throw good food away reflects an apparent failure to understand this important safety issue.  (Docket No. 81-1 at 104).  Nevertheless, those considerations do not negate the reasonable inference that, because Defendant did not fire Plaintiff for his error, the incident did not establish that he was unable to carry out the essential duties of his position.

abuse, and Plaintiff's account of the interaction does not reflect such abuse;[28] and (iii) although Plaintiff's refusal to cook, without identifying an applicable accommodation or disability-related limitation, likely constitutes insubordination and may well warrant termination, a single instance of such refusal does not necessarily entail that Plaintiff was not "qualified to perform the essential functions of the job, with or without reasonable accommodations". Accordingly, the Court finds that Plaintiff has met his burden with respect to the first two elements of his disability discrimination claim. Thus, as is often true in discrimination cases, Plaintiff's claim turns on whether he can establish that there was a causal connection between his disability and his termination.[29]

Plaintiff's argument with respect to the third element of his *prima facie* case leans heavily on a characterization of the factual record that the Court has found to be unsupported. As Plaintiff presents it,

> [Plaintiff] was hired as a cashier with accommodations limiting him to light-duty tasks and exempting him from cooking and stocking. Both . . . Fragello and Hemminger understood that Mr. Bingham was disabled, receiving Social Security Disability benefits and restricted to part-time cashier work.
>
> On January 12, 2023, . . . Johnson demanded that [Plaintiff] perform physically demanding cook duties that he could not perform because of his disability. When [Plaintiff] explained that he was unable to do so and that he had accommodations limiting him to cashier duties, . . . Johnson terminated him on the spot rather than contacting . . . Hemminger or HR to confirm those restrictions. This is direct evidence that [Plaintiff's] disability was the reason for his termination. [Plaintiff] was fired specifically because he could not perform tasks outside the scope of his restrictions and accommodations.

---

[28] Plaintiff's questioning of his managers as to whether they could rebuild a diesel engine might be seen as impertinent, or confrontational, but (at least in isolation) it does not strike the Court as abusive. (Docket No. 81-1 at 39).

[29] *Cf. Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 196 (3d Cir. 2015) (making similar observation concerning retaliation claims).

(Docket No. 84 at 10-11).  On the contrary, however, as discussed in Section V(A) above, the evidence does not support Plaintiff's assertions that he was hired "with accommodations limiting him to light-duty tasks and exempting him from cooking and stocking"; nor that he was "restricted to part-time cashier work"; nor that the cooking duties were "physically demanding"; nor that he "could not perform" those duties "because of his disability"; nor that he "explained . . . that he had accommodations limiting him to cashier duties".  Plaintiff is therefore seeking to construct an inference of discrimination on an illusory foundation.

The Court notes that traditional bases for a *prima facie* causal inference, such as a pattern of hostility toward disabled employees, or more favorable treatment of similarly-situated non-disabled employees, are not present here.  Moreover, Defendant's general policies of hiring and accommodating disabled people, and its specific conduct in hiring Plaintiff twice within about a year before his discharge, with knowledge of his disability (and in informally accommodating his post-surgical limitations on heavy lifting) hardly bespeak a discriminatory animus.

Because Plaintiff has failed to proffer a supportable basis upon which a factfinder could infer that he was terminated because of his disability, he has not made out a *prima facie* case of discrimination.  It is therefore unnecessary to proceed to the second phase of the discrimination inquiry and assess whether Defendant's articulated reasons for terminating Plaintiff could be found to be pretextual.[30]  The Court finds that there is no genuine issue of material fact as to Plaintiff's

---

[30] *See, e.g.*, *Marzano v. Computer Science Corp. Inc.*, 91 F.3d 497, 508 (3d Cir. 1996) (The *prima facie* hurdle "has important consequences. By meeting his or her prima facie burden, the plaintiff earns the right, as in a poker game, to require the employer to show its hand — that is, to offer an explanation other than discrimination why the employee suffered an adverse employment action.).

claim for disability discrimination, and that Defendant is entitled to judgment thereon as a matter of law.[31]

## VI.    CONCLUSION

Based on the foregoing, Defendants' Motion for Summary Judgment (Docket No. 78) is granted in its entirety, and this action will be dismissed, with prejudice.  An appropriate Order follows.

_s/Nora Barry Fischer_
Nora Barry Fischer
Senior U.S. District Judge

Dated:  October 31, 2025

cc/ecf:  All counsel of record

---

[31] As Plaintiff has failed to sufficiently support any of his substantive claims, the Court need not address his request for punitive damages.